UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
MICHELLE FRACASSO, and
JONATHAN SPITZER

|  |  |
|---|---|
| Plaintiffs, | **AMENDED COMPLAINT** |
|  | 07-CV-4649 |

THE CITY OF NEW YORK,
P.O. EDELMAN-WINSTEAD,
Tax No. 939814, individually and in his official capacity,

                                           Defendants.
------------------------------------------------------------------------------X

       Plaintiffs MICHELLE FRACASSO ("Fracasso") and JONATHAN SPITZER ("Spitzer", together, "Plaintiffs"), by their attorney, CRAIG STUART LANZA of Balestriere PLLC, complaining of the defendants, respectfully allege as follows:

**PRELIMINARY STATEMENT**

       1.    Plaintiffs bring this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988 for violations of their civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.   Plaintiffs are also asserting supplemental state law tort claims.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §1983 and 42 U.S.C. §1988, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343 and 1367.

## VENUE

4. Venue is properly laid in the Southern District of New York, under U.S.C. §1391(b), since the claims arose in this District.

## JURY DEMAND

5. Plaintiffs respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. Plaintiffs are citizens of the United States, and at all relevant times residents of the City and State of New York.

7. Defendant, THE CITY OF NEW YORK, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. Defendant, THE CITY OF NEW YORK, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under

the direction and supervision of the aforementioned municipal corporation, City of New York.

9. At all times hereinafter mentioned, the individually named Defendant, P.O. Edelman-Winstead ("Edelman") was a duly sworn police officer of said department and was acting under the supervision of said department and according to his official duties.

10. At all times hereinafter mentioned Defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11. Each and all of the acts of Defendants alleged herein were done by said Defendants while acting within the scope of their employment by Defendant THE CITY OF NEW YORK.

12. Each and all of the acts of the individually named Defendant alleged herein were done by said defendants while acting in furtherance of his employment by Defendant THE CITY OF NEW YORK.

**FACTS**

13. On March 4, 2006, at approximately 1:15 a.m., following their wedding rehearsal dinner, Fracasso and Spitzer were approximately 100 feet away from exiting Central Park near West 90th Street, in the City, County, and State of New York. They were walking their dogs in a place that had enormous significance to the couple. They had met while walking their dogs in Central

Park, they were engaged in Central Park, and they were to be married in Central Park in the afternoon of that very day.

14. Fracasso and Spitzer had asked their guests to make donations to the Central Park Conservancy in lieu of wedding presents. In a matter of hours, their wedding reception and ceremony would be taking place at The Boathouse in Central Park.

15. Fracasso, 38, is a former director of legal recruiting and marketing at a large New York law firm. Spitzer, 39, is a portfolio manager of a New York City-based hedge fund. The couple has resided in New York City since 1990. Neither has any criminal history.

16. At or about 1:15 a.m., P.O. Edelman stopped his police vehicle on Central Park Drive, directly above the path where Fracasso and Spitzer were walking. Edelman rolled down the passenger-side window and demanded that Spitzer approach his vehicle.

17. Spitzer approached the vehicle as ordered. Fracasso remained with the two dogs on the walking path approximately 25 feet below.

18. Edelman was the sole police officer in the vehicle. He told Spitzer that Central Park closed at 1:00 a.m. Spitzer apologized and explained that he had a late start walking the dogs due to his wedding rehearsal dinner, and that he was moments from exiting the Park, as demonstrated by his proximity to the West 90th Street access path.

4

19.   Growing increasingly agitated, Edelman informed Spitzer that his dogs should be leashed.  Spitzer responded that he thought dogs were allowed off-leash anytime between 9:00 p.m. and 9:00 a.m.

20.   Edelman demanded Spitzer's identification.  Spitzer responded that he lived directly across the street—on Central Park West and 88th Street—and that he did not carry a wallet into Central Park for safety reasons.  He added that he would be willing to go to his home and produce the proper identification.

21.   Spitzer asked Edelman to allow him and Fracasso to leave the Park, as they were so close to the exit and lived in the immediate area.

22.   Fracasso was standing more than 25 feet away from Spitzer and Edelman, and other than a few of Spitzer's responses, she could not hear the conversation taking place.  Fracasso was shivering with cold, having only dressed warmly enough for a 10-minute walk.  When she heard Edelman shouting at Spitzer, she walked a few feet up the path with the dogs toward the Park's exit.

23.   At this point, Edelman left Spitzer and sprinted down the slope toward Fracasso, screaming at her.  Edelman – a well-built, armed police officer – grabbed Fracasso – a slender 38-year old woman – by the neck.

24.   Edelman placed a can of mace/pepper spray next to Fracasso's eye, and shouted expletives and threats at her.

25.   Fearing for her safety, Fracasso tried to calm Edelman, begging him not to hurt her.  She asked him what she had done wrong, and pleaded for his

5

mercy, stating that she was to hold her wedding ceremony that day in Central Park. Until this point, she had not engaged in any dialogue with Edelman.

26. Edelman placed Fracasso under arrest. He provided no explanation, and did not inform her of any crime she had committed.

27. Edelman handcuffed Fracasso's arms in a manner designed to induce severe pain. He grabbed her handcuffed wrists roughly with one hand. He put his other hand on her mid-back and pushed her up the hill. Edelman shoved her violently into the back seat of the police vehicle and left the door open.

28. Meanwhile, Spitzer was in obvious distress, begging Edelman not to hurt his wife.

29. Shortly thereafter, approximately 6-10 additional police officers in marked and unmarked police vehicles arrived, a somewhat surprising response to the detention of two unarmed, middle-aged professionals who lived barely one block away. Fracasso was held in police custody while Edelman conversed with the arriving officers.

30. A senior NYPD Sergeant approached Fracasso in the vehicle and asked her to explain the events of the evening. He then told her that Edelman would take her to the Police Station for booking.

31. Fracasso begged the Sergeant not to allow Edelman to take her alone in the car. She explained that he seemed crazed, and that she thought that he was possibly on drugs or steroids since his eyes were dilated and his behavior

6

was abusive, aggressive, and extreme. She explained that he had hurt her wrists and back, and that she feared for her safety. She asked the Sergeant to accompany them to the Police Station. The Sergeant left to speak with Spitzer and the other officers.

32. When he returned to the car, the Sergeant stated that he was releasing Fracasso to go home with her husband. He said, "Please don't let the behavior of one bad apple influence the way you view the entire force."

33. Fracasso was taken from the police vehicle and escorted to where Edelman was standing. Edelman asked for her Social Security number and then handed Fracasso a summons for disorderly conduct and a summons for walking in Central Park after hours.

34. Spitzer and Fracasso went home and immediately called the Civilian Complaint Review Board ("CCRB"). All charges they filed against Edelman were substantiated by Inspector Leroff of the CCRB.

35. Fracasso sustained bruising and cuts. Her preexisting back condition also became aggravated. Indeed, Fracasso was in so much pain that she was barley able to dance at her wedding.

36. Plaintiffs have been emotionally affected by being victims of an egregious misuse of authority. The wedding was marred by Fracasso's physical pain and Fracasso and Spitzer's emotional anxiety.

37. The wedding took place in the same park as the unlawful harassment and detention described above. What was supposed to be the happiest day of their lives was one of the most traumatic.

38. During the exact time that Fracasso experienced the great stress of preparing to defend herself and appearing in a criminal action, she suffered a miscarriage in her 8th week of pregnancy.

39. The case against Fracasso for walking in the Park after hours was dismissed.

40. The case against Fracasso for disorderly conduct was dismissed upon motion of the District Attorney.

41. After the CCRB substantiated the charges against Edelman, Fracasso called the NYPD officer leading the investigation against Edelman, Officer Hiriam Lopez, on two separate occasions. Fracasso asked Officer Lopez not to delay in his investigation of Edelman, since the NYPD has 14 months from the date of incident to complete their investigation.

42. Fracasso explained that she was worried that Edelman would seriously hurt someone in the near future, and that she believed that Edelman was taking either drugs and/or steroids. Officer Lopez was dismissive of Fracasso's concerns, and Fracasso was told that the NYPD never opened an investigation.

43. Plaintiffs lost faith in New York State and City, and because of the stress and injury they suffered as a result of these acts, decided a few months after the incident to move out of New York State.

## FIRST CLAIM FOR RELIEF
## DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. § 1983

44. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "43" with the same force and effect as if fully set forth herein.

45. All of the aforementioned acts of Defendants, their agents, servants and employees, were carried out under the color of state law.

46. All of the aforementioned acts deprived Plaintiffs of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States, and in violation of 42 U.S.C. § 1983.

47. The acts complained of were carried out by the aforementioned individual Defendant in his capacity as a police officer, with all actual and/or apparent authority attendant thereto.

48. The acts complained of were carried out by the aforementioned individual Defendant in his capacity as a police officer, pursuant to the customs, usages, practices, procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

49. Defendants, collectively and individually, while acting under color of state law, engaged in conduct which constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

50. The acts complained of deprived Fracasso of her rights:

    A. Not to be deprived of liberty without due process of law;

    B. To be free from seizure and arrest not based upon probable cause;

    C. To be free from unwarranted and malicious criminal prosecution;

    D. Not to have excessive force imposed upon her;

    E. Not to have summary punishment imposed upon her; and

    F. To receive equal protection under the law.

## PENDANT STATE CLAIMS

51. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "50" with the same force and effect as if fully set forth herein.

52. On or about May 23, 2006 and within (90) days after the claim herein accrued, Plaintiffs duly served upon, presented to and filed with Defendant THE CITY OF NEW YORK, a Notice of Claim setting forth all facts and information required under the General Municipal Law § 50 (e).

53. Defendant THE CITY OF NEW YORK has wholly neglected or refused to make an adjustment or payment thereof and more than thirty (30) days have elapsed since the presentation of such claim as aforesaid.

54. This action was commenced within one (1) year and ninety (90) days after the cause of action herein accrued.

55. Plaintiffs have complied with all conditions precedent to maintaining the instant action.

56. This action falls within one or more of the exceptions as outlined in C.P.L.R. § 1602.

## FIRST CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## ASSAULT

57. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "56" with the same force and effect as if fully set forth herein.

58. Defendant police officer's aforementioned actions placed Fracasso in apprehension of imminent harmful and offensive bodily contact.

59. As a result of Defendant police officer's conduct, Fracasso has suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

## SECOND CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## BATTERY

60.　Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "59" with the same force and effect as if fully set forth herein.

61.　Defendant police officer touched Fracasso in a harmful and offensive manner.

62.　Defendant police officer did so without privilege or consent from Fracasso.

63.　As a result of Defendant police officer's conduct, Fracasso suffered bodily injuries, including but not limited to, swelling and bruises on the wrist.

## THIRD CLAIM FOR RELIEF UNDER N.Y. STATE LAW
## FALSE ARREST

64.　Plaintiffs repeats, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "63" with the same force and effect as if fully set forth herein.

65.　Defendant police officer arrested Fracasso in the absence of probable cause and without a warrant.

66.　As a result of the aforesaid conduct by Defendants, Fracasso was subjected to an illegal, improper and false arrest by Defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings.

67. The aforesaid actions by Defendants constituted a deprivation of the Plaintiffs' rights.

### FOURTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### FALSE IMPRISONMENT

68. Plaintiffs repeats, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "67" with the same force and effect as if fully set forth herein.

69. As a result of the foregoing, Fracasso was falsely imprisoned, her liberty was restricted for an extended period of time, was put in fear for her safety, was humiliated and subjected to handcuffing, and other physical restraints.

70. Fracasso was conscious of said confinement and did not consent to same.

71. The confinement of Fracasso was without probable cause and was not otherwise privileged.

72. As a result of the aforementioned conduct, Fracasso has suffered physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedom.

### FIFTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### MALICIOUS PROSECUTION

73. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "72" with the same force and effect as if fully set forth herein.

74. On May 2, 2006, Defendants commenced a criminal proceeding against Fracasso.

75. Defendants lacked probable cause to commence said criminal proceeding against Fracasso.

76. Defendants were motivated by actual malice in commencing said criminal proceeding against Fracasso.

77. On June 28, 2006, the criminal prosecution against Fracasso was dismissed upon motion of the assistant district attorney handling the matter.

78. As a result of the aforementioned conduct, Plaintiffs suffered physical and mental injury, together with embarrassment, humiliation, shock, fright, and loss of freedom.

**SIXTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

79. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "78" with the same force and effect as if fully set forth herein.

80. The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

81. The aforementioned conduct was committed by Defendant police officer while acting within the scope of his employment by Defendant THE CITY OF NEW YORK.

82. The aforementioned conduct was committed by Defendants while acting in furtherance of their employment by Defendant THE CITY OF NEW YORK.

83. The aforementioned conduct was intentional and done for the sole purpose of causing severe emotional distress to Plaintiffs.

84. As a result of the aforementioned conduct, Plaintiffs suffered severe emotional distress, mental injury, embarrassment, humiliation, shock, fright, and, in the case of Fracasso, physical injury and loss of freedom.

### SEVENTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW
### NEGLIGENT HIRING/TRAINING/SUPERVISION/RETENTION

85. Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs numbered "1" through "84" with the same force and effect as if fully set forth herein.

86. Defendant CITY OF NEW YORK selected, hired, trained, retained, assigned and supervised all members of said its Police Department, including the defendants individually named above.

87. Defendant CITY OF NEW YORK was negligent and careless when it selected, hired, trained, retained, assigned, and supervised all members of its Police Department including the defendants individually named above.

88. Due to the negligence of the Defendants as set forth above, Plaintiffs suffered physical and mental injury, pain and trauma, together with embarrassment, humiliation shock, fright, and loss of freedom.

89. By reason of the aforesaid conduct by defendants, Plaintiffs request the following relief:

A. Compensatory damages in the amount of one million dollars ($1,000,000);

B. Punitive damages in the amount of two million dollars ($2,000,000);

C. An award of reasonable attorney's fees pursuant to 42 U.S.C. § 1988, as well as costs and disbursements; and

D. Any further relief as the Court may find just and proper.

**WHEREFORE**, Plaintiffs demands judgment in the sum of one million dollars ($1,000,000) in compensatory damages, two million dollars ($2,000,000) in punitive damages, plus reasonable attorney's fees, costs, and disbursements of this action.

Dated:   New York, New York
         June 19, 2007

By: _____

Craig Stuart Lanza (CL-2452)
BALESTRIERE PLLC
225 Broadway
Suite 2700
New York, NY 10007
Telephone 212-374-5404